The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning, everyone. We have six cases. Two will be submitted later today on the briefs without oral argument. Those are Appeal 3187 Clayton v. Department of Treasury and Appeal 7087 Thrower v. Department of Veterans Affairs. On the four-case argument list, we'll hear argument first in Appeal 3057 from 2008, Cologne v. Department of Justice. Mr. Sheldon, good morning to you. Welcome to the court. Please proceed. Thank you. I was reading back through the initial decision of the administrative judge, and I found an interesting paragraph. It's in the appendix. It's page 16, and the brief is page 25. He wrote, by regulation, a tenured employee against whom an adverse action is taken is entitled to a reasonable time, but not less than seven days. And so I put the rest of the quote, citing 7513 v. 2. The interesting thing about that sentence that I just noticed while I was sitting there is he says it's by regulation. I find it important that it's by statute. It's not by regulation. Then he says here, it is certainly arguable that the agency was required to afford appellate with a new period to respond to the proposed action after the severity of the penalty was made clear, and that the response period is required to be a minimum of seven days. In fact, the agency afforded the appellate with only three additional days to make a new response. Well, counsel, the administrative judge then goes on to find the lack of credence and invokes the harmless error. It seems to me if it was properly invoked, that's the end of the case, despite the foreshortened time that they've given to your client. So how do you address the issue of the error being harmless on this record? Well, let me say, if I may add something to it. What would you have done differently than what you did if in the initial notice, instead of at the end of the motion, it had referred to removal? What would you have done differently? You've got a three-page answer, quite detailed. I understand, and I was actually about to address both of those. It was just in the context, because I think that what was significant about the sentence that I just read was three additional days. And I think the whole mindset of the administrative judge in his finding of harmless error was that it was three additional days. And I think if we take a step back and say, what if, and there's an additional requirement, 30 days advance written notice. You're talking about the time, but I'd like to find out, what would you have done differently? What would you have told the warden that you're saying you didn't have the opportunity to tell the warden? This is, first of all, it wasn't me. I wasn't representing them. It doesn't matter. You don't have a record as it stands. Yes, yes. What was said in the appellant's response was an admission of the wrongdoing and an acceptance of the punishment. Now, had there been a notice that this was a termination of the employment as opposed to a removal of the position, he would have had time for preparation. But upon the change, what was missing was an opportunity to meet with the warden, prepare with an attorney. What would have been done was the warden made a decision based upon the record that she had without a meeting in the context of the actual proposed action. I can't accept that because what happened was when she got his reply, she looked at it and then told the assistant warden to tell him this was not a demotion, this was to be a removal. Gave him three additional days within which he could respond. He didn't respond, nor did he ask for more time. I would inquire. Again, it doesn't matter. I don't see how he's been injured in this case by the fact that maybe the notice wasn't what it should have been. I can understand if he said, had I known that it was to be definitely a removal and not a demotion, I would have presented affidavits to the three additional people, the three people at the prison who testified as to the good work I had done. So that I can understand, but apparently the argument seems to be a technical argument that because they only gave him three days rather than seven, somehow he's been injured. I don't see the injury. I've got two different injuries and a third basis. One of the injuries is something that hasn't been talked about. He's entitled to 30 days written notice of the proposed action. The administrative judge acknowledged that Mr. Cologne's interpretation and understanding of the letter was reasonable, which means he didn't have, when he got that three days, that three-day notice, that was not with an additional 30 days before the action was taken, which means at minimum, at minimum, he lost a few weeks' pay. That's harm. Not on the seven-day versus three-day, but on the 30-day. He didn't have the 30-day notice, which he's entitled to. He's entitled to pay for that time. But he had notice. The notice began, the very first sentence said, I propose to remove you. It said that, didn't it? It removed from its position and it says in the same letter to demote. It doesn't say termination of employment. Removal from position. If I were in charge and I were going to demote someone, I doubt very much I would have begun the letter saying, I hereby propose to remove you from that position. I would say, I hereby propose to demote you from your position as this to your position as that. And that, Your Honor, is why you're on this bench and not writing letters at the prison in Victorville. But the fact remains, it was a reasonable interpretation and the administrative law judge found it was a reasonable interpretation. If it was reasonable for him to understand it that way, then that's what he was given notice of. He wasn't given notice of something that was in somebody's mind other than that. But the notice was then cured. The problem was cured. The notice was clarified. It was made crystal clear that the action proposed was going to be termination of employment. So then all we have left is no longer confusion, just shortness of time. So that's why it's important for you to tell us, what would he have done if instead of three days, he had had three weeks? What would have been different? What would have been different was that the warden would not have been defending the position that she took without it having been addressed in the first instance. I don't understand what that means. If he was unable to produce some evidence because of the shortness of time and could show that he would have been able to produce that evidence given more time and could show that that evidence would have exonerated him or otherwise substantially helped his case, then the lack of time in that instance might establish prejudice. But I don't see how you've established any specific prejudice. And therefore, it seems like the administrative judge was correct in finding the error to have not caused harm. I cannot accept the concept that the original letter be treated as an error that was cured. He did not have his notice at that time. His notice period, both notice periods have to start anew. It's number one. Number two. The worst you can say about the letter is it was ambiguous because at the beginning it said they were going to remove him and at the end it spoke about his demotion. Yes. So it was an ambiguity. We don't know. And then Judge Mischel said that ambiguity was clarified when he was told that what was involved was his removal, not his demotion. There's no question, but they committed the violations. The issue was whether he showed sufficient remorse to convince the warden that he would not commit such violations again and that he could be trusted. That issue did not get addressed when he met with her. It's not something we can show evidence of what she would have thought if that had been addressed in the meeting. He also had an opportunity to write to the warden, and he did on December 14th, which was two weeks after the notice of removal. That was a letter addressed to the warden, which is part of the record, explaining what his actions were in trying to justify it. So he did have an opportunity to do that, didn't he, though? Not in light of he didn't have to address whether he could be trusted to continue his employment because he didn't know his employment was at stake at that point. He never had the opportunity to meet with her to address that. He had that three days of his Christmas week. For heaven's sake, it was from December 26th to December 29th. He didn't have the opportunity to be able to get a lawyer during that time or make preparation to meet with her to really discuss the issue of whether he could be trusted to continue. That's what he never had the opportunity to talk to her about with legal representation, with somebody who could speak well on his behalf. It's not the question of whether, for these issues, it's not a question of whether she was entitled to do it. It's a question of whether she would have done it if they had been able to address that with her. My time is running short, and there is another issue, and that is that the warden did not consider any alternatives. She has—well, this was covered in the brief. It's well covered in the brief, so maybe you should save the remainder of your rebuttal time. I will do that. All right, we'll hear from the government now. Starting at this point, you don't contest that under the law, Cologne was entitled to the seven days and the 30 days, right? No, Your Honor. And he was given neither of those timeframes that he was entitled to. We acknowledge that while Mr. Cologne was put on notice, that we were required by the statute to give him seven days notice, and that instead— And 30 before the effective date. Yes, Your Honor. And he got nine. And he got—well, we would say he did get notice of the 30 days. He did indeed have notice that he was going to be removed from his position. But the effective date of the removal was far short of 30 days from when he was first told that removal was definitely the action. Actually, Your Honor, the effective date of the removal was within the timeframe contemplated by the original letter. Yes, but Du Bois, he agreed that the original letter was ambiguous and that until it was cured, it was defective. And he didn't have 30 days before the effective date measured starting with the cure date. Your Honor, but we were only required to give him seven days from our clarification. So— And we do acknowledge— No, it's not 30 days from the cure date because the original letter was indeed a removal letter. And we have produced substantial evidence— Well, that's your reading of it, but it's not the administrative judge's reading of it. Well, Your Honor, it was the administrative judge's reading of it. He simply provided that Mr. Cologne did also provide a reasonable explanation that he believed otherwise. I mean, the structure of the letter itself— Are you denying that the administrative judge found the letter ambiguous and therefore deficient? Your Honor, we are agreeing that the administrative judge found the letter to be— We're denying that the administrative judge found the letter was not a letter of removal. It was indeed a letter of removal. If that's right, then there was no seven-day violation either. Well, Your Honor, we were required, however, to clarify the letter because it was ambiguous and Mr. Cologne— Well, if it's ambiguous, then it can't be counted as valid for the 30-day purpose any more than the seven-day purpose, can it? Your Honor, the intent of the agency from the beginning was indeed to remove him. At best— The intent of the agency is not relevant. The relevant point is what notice did he get, was it sufficient, and when did he get it? And the notice he got was notice of removal. That is exactly how the letter began. It began with the phrase— But we know how it began and we know how it ended, and it was found to be ambiguous, and it's hard to quarrel with that finding. Well, Your Honor, we are disagreeing to the extent that the letter is said to not be a letter of removal. And we have produced substantial evidence in support of the position that it indeed was a letter of removal. You're not cross-appealing. You're not asking us to reverse the administrative judge's decision and sort of holding that the letter was unambiguous, perfectly sufficient, and therefore there's no violation here. No, we are not, Your Honor. In fact, our principal argument is we agree with the administrative judge that there was no harmful error that Mr. Cologne failed to show. But if you're saying there's no harmful error, you're conceding that there was error. But what you said for the first three and a half minutes is there was not error. So it seems like you want to make up your mind. Either there was no error or, yes, there was error, as down below, but it was harmful. Your Honor, even if we presume there is error, that error was never shown to be harmful. Suppose the warden had not told him the way it was done and never mentioned anything about this was a removal proceeding. The warden got his response, and the next thing the warden did was to remove him. Would you still say there was harmless error? Just skip the study where the warden said to the assistant warden, you tell him that he's being removed, not demoted. Suppose that we don't have to bother with that. No, Your Honor. I believe the warden should have, under statute, clarified to me what the intent of the letter was after having received the letter from Mr. Cologne, in which Mr. Cologne clearly states that he believed it was a demotion. So that was the intent of meeting Mr. Cologne and giving him an opportunity to… So my hypothetical I would put to you, perhaps harmless error could not be invoked. Yes, Your Honor, I don't like to assume all hypotheticals, but I, sitting here today, cannot come up with an explanation that we could at least invoke harmless error in that situation, having simply proceeded forward after having learned that the petitioner, in that instance, had learned or had believed that the letter was a letter for demotion. Again, we do contend the letter was a letter for removal. We have produced evidence from both the individual who drafted the letter, though that being indirect evidence would dissuade us from resources, and evidence from the warden who reviewed the letter prior to it going out. But the December 14th letter from Mr. Cologne did not speak to any kind of removal. He understood it to be a demotion. Yes. Now, does the warden have any statutory authority to increase the penalty from demotion to removal? No, Your Honor. On what basis is that statutory granted? Your Honor, the warden is the – as the deciding official does not have the authority to increase the penalty. The penalty is set forth by the proposing official, and the proposing official then gives the action to the warden who makes the ultimate decision. The warden can reduce the penalty, but as a matter of law, the warden cannot increase the penalty. He doesn't have the authority. So that's a legal restriction that's imposed upon the warden. Yes, that's correct. As to the penalty that can be imposed. So is that what happened here, the original proposal? Was it demotioned? Otherwise, it's ambiguous on that basis? Well, Your Honor, the original – we disagreed again. We presented evidence. If you look at page 213 of the administrative record, if you look at 217 to 218 of the administrative record, the testimony of John Stockton, we produced evidence that Ruth Asuega, who's the human resources manager, who drafted the letter on behalf of the proposing official, contends that it was a letter for the removed. But you have to admit, then, that the November 29th letter, though, is still ambiguous. Although it starts off with, plan to remove me, there is a sentence in the middle that says, no, it was pointing to demotion. Your Honor, we understand that it created confusion for Mr. Colon, and that is why we went forward in the testimony. Let me put – see if I can focus a little more on this. Suppose they gave him a notice saying, because of all these misdeeds, I propose to demote you by two grades. And he responded as he did, and then the warden issued the following opinion. He's admitted all the misdeeds, but I think the penalty of demotion is quite inadequate for what he did. Accordingly, I am removing you. You would agree he could not do that? Yes, that would be proper. He should not do that. And in that instance, I think it would be a harder case to argue harmful – that there was no harmful error, because in that case, the warden is increasing the penalty. Well, it's not a question of harmful error. It's that the warden had no authority to do what the warden – what I suggested the warden did. And I suppose there's no room to consider harmful error if someone is acting beyond their authority. That is generally correct, Your Honor. And again, an increase in penalty would be harder to contend there was a harmful error if it did come, because then we would try to argue that a demotion and a removal are the equivalent, which they are not. Well, why are you asking us to reverse the finding of the A.J. that Mr. Colon was reasonably confused by the ambiguous lookout? Your Honor, you're making an argument here as if we were the administrative judge. You say you have some evidence on your side, and there's some evidence, I suppose, the other way. The administrative judge was the fact finder. The administrative judge made the determination of whether Colon was reasonably confused or not, and held that Colon was reasonably confused. You seem to be arguing here that that was wrong, that we should overturn that, and that you should win because there was simply no error. Well, Your Honor, I disagree with that. I cannot argue that you need to do that, because again, as you pointed out earlier, we have not crossed the field in this case. So then why are you making the argument? It seems to undercut your position that there's no harmful error. Yes, it seems to be trying to defend the determination on the ground that is improperly before us. Your Honor, because I can see that I answered in response to your question, and in my view, the letter is clear that it indeed was an action for removal. But you're not the A.J. The fact finder found the letter was ambiguous and confusing. The fact that your personal opinion is as clear as a bell is utterly irrelevant. And so would my personal opinion be, because I'm not the fact finder. The only person who counts here is the fact finder. If you're going to argue that there was less than substantial evidence to support that finding, you can make that argument. I think it will be very hard to make it convincing that you make the argument. But given this record, it looks to me like we have a finding that is irreversible, and therefore you have to live with it. But you seem unwilling to live with it. You seem to be trying to undo it. Your Honor, I acknowledge that I'm responding to your questions. I do not agree. I do agree with your analysis that, indeed, we need to show that it was not supported by substantial evidence, just as the petitioner in this instance would need to show that the finding that there was no harmful error was not supported. And in this case, he cannot show that. He cannot demonstrate that. But isn't your best argument, counsel, that there was an ambiguity in the letter and it was so fond by the A.J. that he determined it would be an ominous error and there was no prejudice, therefore it will be affirmed when he's done it? That's your argument? I would agree, yes. That's your best argument? That is the best argument. If I was asked only one question, what I began with is I attempted to note that Mr. Kalam was provided with notice and that while there was an error, that error was not harmful. Well, is it my part that basically what you're saying is we don't have to get into the question whether the administrative court judges right or wrong, whether it's finding of confusion, whether it's not supported by substantial evidence. Because even assuming everything that he says stands, he still loses because he hasn't shown how he was hurt by this. Whether you call it prejudicial error or plain error or whatever it is, he wasn't prejudiced that everything that happened wouldn't have been any different if he had known from the very beginning without any doubt that he was about to be removed. That's your basic law. That is correct. Whether we heard by 27 days, whether we heard by four days, Mr. Kalam failed to demonstrate to the board that he had suffered a harmful error as a result. What about the issue of counsel? As I understand it, he argues that once it was made clear to him that he was being fired, that he wanted to get an attorney and tried to get an attorney and wasn't able to do so in the three days following a holiday between the 26th and 29th of December. If he had been able to get a lawyer, could the warden have refused to meet with him and his lawyer? I do not know whether or not the warden could have refused. Had he asked for an additional time? That's not the question. The question is if he had shown up on the 29th with a lawyer, would the warden have been legally authorized to say, Cologne, I'll talk to you, but I'm not talking to your lawyer. You're not allowed to have a lawyer here. He could have talked to the lawyer, but the question of harmful error goes to whether he can demonstrate or had demonstrated anything that would have caused the agency to reach a conclusion different from the one it would have reached. I'm not familiar with that verbiage in the case law, but I'm trying to ask you a question about right to counsel where one's job is on the line. And you seem to agree that if he had been able to get a lawyer, the warden would have had to hear from the lawyer. Yes. Now, do you disagree that he was trying to get a lawyer? He has presented no evidence that he was trying to get a lawyer and did not present any evidence that he actually tried to get a lawyer in the record below. He has said he might have tried to get a lawyer, but that's different from him actually trying to get a lawyer or for him demonstrating that he would have done anything substantively differently. Mr. Cologne admitted all the charges, and he has not said that he would have either added a mitigating factor or denied the charges if he had known this had been a removable action. Look, you were here when opposing counsel argued. So I'm trying to get you to respond to his argument that it was a serious deficiency to not have a lawyer there to help Cologne in the showdown meeting with the warden because the lawyer could have articulated in ways that Cologne perhaps could not why the merits of his long, good service were so great that they should outweigh the admitted misdeeds. Mr. Cologne, however, has not provided anything substantive about how the lawyer would have articulated that, which he had an opportunity to do at the board. Hypothetically, Mike? As I understand it, he never said to the warden, I'd like to get a lawyer, but I can't get a lawyer in three days. How about giving me another ten days within which I can get a lawyer? He never said that. He never requested for additional time. He never requested even the presence of a lawyer. But had he had a lawyer present, hypothetically, he might have raised something, but he never before the board demonstrated what that lawyer might have raised. When represented by a lawyer, he did not demonstrate what a lawyer would have brought that would have caused the agency to change its decision. Without having put that evidence in the record, his case with regards to harm is not supported. Was it not in the record about his service over the decade or more? I forget the exact date. His service is in the record. He provided information about how long he had served. Then the question becomes, could a lawyer using those documents have made a powerful argument to the warden that might have convinced the warden to lessen the penalty? And he has not demonstrated that there is any information that he would have brought out. No, no, no, you're missing the point. I'm agreeing there wouldn't be any new information. There would be the same old information. On the one hand, all of his admission of all of the misdeeds, but on the other hand, all of his service record of good service up to the time of these incidents. And the question is whether a lawyer could have used that documented evidence in a way that might well have persuaded the warden to change her mind. Well, Your Honor, below he provided no evidence that a lawyer would have been able to do that. Well, we know the good service record, right? Yes, Your Honor. This is the first time he was in any kind of trouble. First time employed. Had been promoted, in fact, from lower levels of the correctional hierarchy to a higher level because of his good service. That's correct, Your Honor. You don't think that a lawyer could have made a strong mitigation case out of that information? No, Your Honor, I don't believe simply having a lawyer would have, or that he demonstrated that simply having a lawyer would have made that mitigation case. Right now what we're doing is speculating that a lawyer might have had the value, but he needed to show to the board how that lawyer could have had the value, and he could have. He had that opportunity at the board. Is the approach from the viewpoint of the lawyer, or is it the approach from the viewpoint of the warden? That is the warden's removal letter, removing him. When you read that letter, it's quite clear the warden took into account all of his many years of excellent service, but decided what he had done in this situation was so bad that she didn't want him anymore to be working there, and therefore you could say that nothing that the lawyer could have possibly said as articulate as such a lawyer might be would have led the warden to change her mind. Why isn't that the answer? Well, Your Honor, I also agree with that. That is consistent with the warden bank's testimony that Mr. Coulomb's offenses went to the very core of the agency's mission, went to the very fabric of their existence, and that not only did Mr. Coulomb engage in offenses, direct offenses, but he also attempted to cover up his offenses by transferring prisoners to other units. So even with a strong mitigation argument, we do not have an argument that was not presented that those factors would be enough to change the warden's decision. And again, he needed to demonstrate that before the board in the first instance. It's a little bit difficult to imagine how somebody can prove that a decision-maker likely would have made a more favorable decision if only X circumstances were different. In the case of a missing witness or a document that with more time could have been produced, it's much easier. But here we don't have the case of the missing witness or the missing document. The facts seem all quite well established, and the documents are all in the record. So this is a little bit of a different kind of case. It's a little harsh to say to the petitioner, you have to prove you would have won if the circumstances had been different. So the case law that you refer to doesn't seem to fit the circumstances of this case very well at all. Maybe there should be a different rule about what the petitioner has to show in order to establish the likelihood of prejudice. Your Honor, the statute and regulation, as well as the case law, clearly provide that it is his burden to show the harm and the harm cannot be avoided. Well, of course. Of course he has the burden. No one is suggesting the government has the burden of proving the negative. The question is, what does he have to prove? And in the circumstance of this case, it's not clear to me that he should have to prove more than that a lawyer would have been awfully helpful at the meeting with a warden as opposed to a meeting with a warden without the lawyer in view of her letter. Your Honor, he did not demonstrate that, however, below the board. And that was his opportunity to demonstrate that he had suffered harmful error. And so that issue is not currently before this court. Can you give us any insight into how this all came about? I take it that the favoritism shown here to Mr. Doyle, I guess his name was, was never shown by this prison officer to any other inmate ever in the 15 or so years he was a correctional officer. Can you give us any insight at all into what was going on? Why was Cologne providing these special favors to Doyle? Well, Your Honor, as is found in the record with regards to the investigation report and in the affidavit that Mr. Cologne signed, he was receiving investment advice from this inmate. And in exchange for the investment advice, was giving the inmate special favors, including access favors. What was Doyle's background? Was he a Wall Street king or something before he became an inmate? Your Honor, that is not in the record. And it is not clear what his background was. If he was simply financially savvy or... Is there a file of the Inspector General investigation of this? Your Honor, we did produce a number of the documents from the investigation that are found in the record. The question was, is there a full investigative file produced by the IG? I believe there are additional files besides the ones we produced. The ones we produced are at 204 through 212 of the administrative record. I believe there were some additional... Have you ever seen the file? Yes. Have you read it? I've reviewed it, yes, Your Honor. All of it? All of what was in the record before the... No, no, I'm not asking about what's in the record. I'm asking about what's in the file of the Inspector General of the Bureau of Prisons in this case. I've only reviewed that which is in the record before the NSPB, Your Honor. Well, who chose what went into the record? The record was... Some of the documents in the record were... My point is, did the Bureau of Prisons decide what documents went into the record or did you make the final judgment? No, Your Honor. The attorneys made the final judgment. Well, what are we talking about? You're an attorney and they're an attorney. Which attorney made the decision of what went into the record? Which record? The record before this court or the record before this court? The record before the board. The record before the board was made and the determination was made by the Bureau of Prisons attorney. Because he was the counsel at that proceeding. And in this proceeding, you've been the counsel. Yes, Your Honor. And so in this proceeding, did you make all the decisions about what would be produced to the court? Well, I made the decisions, of course, in conservation with my opposing counsel who also put documents into the supplemental record or into the appendix before this court. So we have a subset of what was before the board selected by you and opposing counsel? Yes, you do, Your Honor. All right. Well, I think we understand your argument. Mr. Sherman, we will give you three minutes and 24 seconds. You still have left for rebuttal. It shouldn't be sufficient, Your Honor. It'll have to be with respect to the warden's determination. It was argued that the warden had determined that the conduct was so bad that it could only warrant removal. But your testimony shows that she was also of the same opinion with respect to somebody who played some pool with an inmate. She said exactly the same thing. The inmate seems to me not quite the same as what he did in the cold. Your Honor, it seems that to you. It seems that to the administrative judge. But to the warden, the warden testified that the person can no longer be trusted. Her description of that conduct would warrant, fit her definition of what warrants removal. It is then within her discretion to make that determination based upon the deciding officer's recommendation. We cannot increase the penalty, but you can certainly decrease it. So there is discretion within that particular officer's ability to say, yes, this is cause for removal, this is not cause for removal. She can say that of conduct that she can reduce. My point is that while everybody except the warden thinks that the two types of conduct are different, the warden thinks even the one that everybody else thinks is lesser warrants removal also. Why does that matter? Because in this case, we have four or five other major acts of misconduct by your client. And the decision in the case to remove him was based on all five, not just on the one that we all agree is maybe lesser. I'm saying that it wasn't based upon all of them. I'm saying that the warden does not really weigh. Her testimony shows that if you do any, if you give any favor to an inmate, you've compromised yourself. You're in danger of compromising again. But we don't have that case. We don't have a case of pool only. We have a case of pool plus five other things. It's required that the warden use her discretion in my argument there, and I'd like to move on. It's that she doesn't exercise the discretion. As soon as she finds that one item, it doesn't matter what else there is. Why did she say that? She says it when she described it. Did she ever say, I refuse to consider, I don't have to consider any of these other charges because that's enough? She says specifically, if you give any favor to an inmate, you compromise yourself, you can't be trusted, and anybody who compromises himself should be removed. That, I believe, is your testimony. I'd like to say one other thing, if I can, before my time runs. It's been two things. If there was, if the letter, it's been said that there was an error in the letter. The harmless error doctrine does not apply to that. That's not a procedural error. We're talking about whether somebody, in deciding what to draft, didn't write what they intended. That's not a procedural error. That's a different kind of error, and harmless error does not apply. That's number one. The other issue is, there's been no evidence, notwithstanding what the government has argued, there's been no evidence as to what the intent of the letter was. The proposing official is the only one who could know what the intent was. The warden decided it should mean something else, and she didn't have the authority to increase the penalty. We've heard nothing in the proceeding below, before the AG. There was nothing from the proposing official. There was only the testimony of the warden, having made the change in her own, by her own authority, which she didn't have the right to do, and Mr. Stockton, who said what the warden told her. All right, I think we've given you ample time, and the government will take the appeal under advisement. We thank you for those comments.